Richard Brown he's going to present the European Commission on We're going to wait just a moment for the quorum to settle before we get started. All right, Miss Fitz, you may begin when you're ready. Thank you, Your Honor. Good morning. May it please the court. My name is Anne Fitz, and I am here to represent the appellant, Sarah Ritchie. I'm going to focus my argument this morning on the first issue that's presented in this unless, of course, the panel has any questions, I'll be happy to answer those. So the issue before this court is whether counsel was ineffective for failing to inform Sarah Ritchie that her conduct arguably fell outside the scope of 18 United States Code Section 2251A prior to the entrance of her guilty plea. Section 2251A, as pertinent in this case, prohibits the use of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. During the briefing of this case on April 5th, 2023, the 11th Circuit handed down its Dawson, which interpreted the term use for purposes of 2251A to require that a minor either actively or passively engage in the depicted sexually explicit conduct to fall within the scope of the statute. Simply put, pursuant to Dawson, an offender uses a minor to passively engage in sexually explicit conduct. This is the focal point of the offender's sexual desire as the offender, not the minor, engages in the sexual activity. I'm going to ask you just this question to focus on the IAC issue. I think what you're likely to say is that, I get it, Dawson is bad for me, but it's not fatal to my argument because it wasn't the object of your client's desire, it might have been the object of her perverted husband's desire. But still, at the time the lawyer gave the advice to the client, what law was there that favored your perspective? Well, first of all, there was the plain language of the statute. Which I think, frankly, can go either way. Well, the plain language of the statute is that a person who uses a minor to engage in the visual depiction violates the statute. Looking at the plain language, there is nothing in there that the term engages in. There are plenty of cases prior to Dawson, at the time that Sarah Ritchie entered her in, the sexually explicit conduct. But if you're talking about plain language, I'm not sure that works. Some of the verbs in the statute, persuade, induce, entice, coerce, to engage in, I get it, might focus on the minor, but I'm not sure that employ and use necessarily do. Well, engages in, it limits the term use. It's not just using a minor, it's using a minor to engage in. It has to be read that way. That's exactly what Howard says, because in Howard, the Seventh Circuit found basically where the government conceded that the minor had not either passively or actively engaged in the sexually explicit conduct. What is passive engagement? Just so I understand. I'm sorry?  Passive engagement is demonstrated by the facts of Dawson. In Dawson, you have a man who is filming himself masturbating, and I'm sorry for the graphic use of terms, but there's no other way around it. He is panning between his own genitalia and the child, and back again to himself masturbating, and back to the child again. In addition, the district court actually said in Dawson that not only is the intent clear from the depiction of the video, with the camera going back and forth between the offender and the minor, that the offender was passively using. In other words, the minor wasn't there helping him masturbate. She wasn't touching him at all, but the fact that the minor's presence was the focal point and the object of sexual desire, that that was clear from the depiction of the video, that first of all, that is enough to show the intent of the filmer to include the engagement of the child. But then on top of it, we have admissions that the defendant in Dawson made regarding the fact that he was sexually aroused by the minor's presence and that he, quote, got off on the minor being there in the room with him. So the court, Dawson court, found that that is enough to show passive engagement in sexual conduct. In other words, if the child was not there, would the defendant be engaging in the sexually explicit conduct by himself? I guess I'm just trying to figure out the line between passive engagement, which you say under Dawson is sufficient, and mere presence, which you say is never sufficient. Okay, well, and then that's where I would say, you look at this case. This case is a case of mere presence. First of all, you can remove the breastfeeding child, the breastfeeding baby. You can remove her from the depiction, from the video, and you have the same depiction of sexually explicit conduct. But the problem here is that we know from the rest of the case that he, the reason that she was breastfeeding the child at the time that these other things were going on was because it was getting him excited and that that was the purpose for it. The problem with distinguishing it from Dawson on the basis that he was the one who was sort of using the child, not her, is that she is charged with aiding and abetting. I think if it would have been sufficient evidence to convict him, then I think you have a problem in explaining why it wouldn't be sufficient evidence to convict her as long as she is aware of what he is doing and is participating in it by... So I do have a couple of responses to that. First of all, she was not breastfeeding the baby to sexually arouse her husband. She was, the facts were, was that she was breastfeeding and the husband happened to see her and then the sexual activity commenced from there. So it wasn't that she was actually knowing that he was aroused by her breastfeeding, that that's the reason why she was breastfeeding was to arouse her husband. That was not it. She was breastfeeding her baby because she was breastfeeding her baby. For the purpose... Was there enough evidence? Well, didn't she admit, though, in the plea that she knew that it would arouse him and that she continued to do it so that he would be aroused? So I have two responses to that. First of all, Congress, and this is from the concurring opinion in United States v. Steen, which is a Fifth Circuit case from 2011, which predates the entrance of the plea in this case. Congress, the concurring opinion says, Congress did not make the production of child pornography turn on whether the maker or viewer of an image was sexually aroused. Regardless of whether the photographer was aroused by the images he produced, to qualify under 2251A, the images must show a minor being used to engage in the sexually explicit conduct. I think in this case, the missing piece of evidence that we have is if Justin Ritchie himself, because he was the filmer, and she and Sarah was the one who engaged in the sexually explicit activity. So you have a disconnect from all of the other cases interpreting the statute, Dawson, Paulo, Asooba, Wright, all of the cases that we've cited in our briefs. This is where this case is uniquely different. The maker of the video is not the same person who is engaging in the sexually explicit conduct. So you have to look at what is depicted in the video, not the intent of the maker of the video. And the piece that I think is missing, the evidentiary piece that would change this case would be if Justin Ritchie himself, as the maker of the video, was also masturbating himself to the image of the child breastfeeding, I think we would have a different case here. Why is that different, though? I mean, wasn't he performing sexual acts on your client? Yes, but he... But what is the difference? The consummation of the act, the derivation of sexual pleasure. He was not receiving the sexual pleasure, so to speak. Well, I mean... He was giving... Some people might disagree with that. It was not his sexual activity that was consummated. It was... He... Well... So with your limited time, because it sounds like we're conflating some things. You have the defense theory that was available to her at the time that she was indicted, and you have whether that theory of defense would carry water today. So let's assume that Dawson is fatal to any defense that she would want to raise today, and let's assume that her counsel at the time of her indictment was ineffective, failed, was deficient in his duties in presenting her all of the facts and the law at the time. Your statement of issues did not include if the attorney was ineffective, was it prejudicial, and if it was prejudicial, what remedy would be available to your client in light of Dawson? Well, it is prejudicial because but for counsel's advice to Sarah Ritchie to plead guilty because he told her she was in fact guilty without giving her any sort of idea of the legal nature of the 2251A charge or to provide her with her options. If she had gone to trial, for example, she would have been able to raise the defense in trial, raise it in a judgment of Equivalent Rule 29 motion, raise it in a JNLV, raise it in a motion for new trial, and she would have been able to present that on direct appeal. But we don't have that in this case. She did not preserve the issue because counsel advised her that she was in fact guilty of the crime as charged, and so she needed to go ahead and plead guilty. And so the prejudice is shown because she would have had a viable defense, a viable argument to make at trial. And this court does not have to decide whether or not the evidence in this case is sufficient to actually acquit her of that conduct. All we're looking at here as an ineffective assistance to counsel case is whether there is enough to be arguable, if there is enough arguable merit involved in this case in order to proceed with the merit. Just to cut to the chase, I mean, I think, maybe this is Judge Abudu's question, I have the same question. What now? Like, Dawson has intervened. So let's assume we bust this thing and send it back. Yeah. So now, so we reverse the, we vacate the conviction, we reverse, we remand it, back down, and depending on how this court rules, you know, we either proceed, we withdraw the plea, we proceed to trial, and we present it to a jury. In the face of Dawson. Absolutely. I don't think Dawson does anything to change the calculus of this case at all. Because the facts, the video clearly does not show the minor passively or actively, but specifically passively under Dawson engaging in the sexually explicit conduct. All right. Thank you, counsel. You have reserved five minutes. And we'll hear from the government now. Good morning, Your Honors, and may it please the Court. John Aycock for the United States. The district court here correctly denied the petitioner's ineffective assistance of counsel claim, both for lack of deficient performance and prejudice. And the district court was able to do so based on the record before it, and it was not required to hold an evidentiary hearing. Starting with deficient performance, accepting petitioner's allegations as true, counsel met with her six or seven times in jail, had viewed the discovery, and had advised her that there was a lot of evidence establishing her guilt as to both the receipt of child pornography charge and the sexual exploitation of a minor charge. That evidence would include the video at issue, the child... Well, we know all the evidence that was against her. That's why she's in prison today. What did her attorney tell her in terms of possible defenses so that she could make a knowing, voluntary, and informed decision about whether or not to plead guilty? Your Honor, all we have to work with is the allegations of the petitioner. And according to her allegations, counsel advised her that there was, again, evidence establishing her guilt, and that she was, in fact, guilty. Counsel also advised her that she could either proceed to trial and risk the maximum sentence or plea bargain and obtain a lower sentence. Was there some legal analysis that her attorney just explained in terms of the possible pros of proceeding to trial or at least pushing back against the government's theory of its case for purposes of getting a better deal? Your Honor, according to the petitioner's allegations, counsel advised her of the prosecution's theory of the case, that because the minor child was portrayed as sort of a prop during the video, that that's why there was a violation of Section 2251, Subsection A. Counsel also advised her, again, that she was, in fact, guilty based on that video and her conduct, and, again, advised her correctly to plead guilty. What was the state of the law at the time? Sorry? What was the state of the law in this circuit elsewhere with respect to the interpretation of this statute at the time? Yes, Your Honor. There's no Seventh Circuit, right? That's right. But likewise, no Dawson. That's correct. Neither Howard nor Dawson were decided at the time of the guilty plea. Petitioner relies on cases from this court construing 2251, Subsection A, as sort of a production of child pornography statute. For reasons we note in our brief, that's mistaken. Petitioner also relies on a couple of cases from the Fifth Circuit, which are factually very dissimilar from our cases. Those are, I believe, lascivious exhibition cases, which don't turn on whether or not the defendants in those cases were engaged in sexually explicit conduct. Meanwhile, you have the cases that foreshadow Dawson, Loess, and Finley from the Third Circuit and the Eighth Circuit, which are much more in line with Dawson. So if I could return to the video, it would have been reasonable for counsel to conclude even before Dawson that the video violated 2251, Subsection A. There's sexually explicit conduct. We're not challenging her attorney's legal conclusions. The question is whether or not she was presented with all of the information so that she could decide whether or not to plead guilty, which was her decision to make, not counsel's. That's correct, Your Honor. And again, counsel did advise her of the prosecution's theory of the case, and that in his opinion, there was a violation of 2251, Subsection A. All right, you keep talking about the prosecution. I'm talking about what defenses were available to her, even if not successful, ultimately, but at least so that she had a full understanding. And I ask this not because Ms. Ritchie is sympathetic at all, but because of the concern and the danger when it comes to the rights of people who are thinking about a plea deal and making sure that they're entering into these pleas, again, knowingly, voluntarily informed as opposed to just entering into the plea based on what you're describing as some pressure points. Your Honor, the change of plea colloquy here was very thorough. It covered everything that was required by Rule 11. The petitioner made a solemn declaration that counsel went over the indictment with her. She had no questions as to the elements of the offenses, the penalties that she faced. She expressed satisfaction with counsel. So any claim . . . But of course, that only goes as far as whether she received . . . I mean, we've said, if you receive ineffective assistance of counsel, then we don't care what you said during your change of plea hearing because the whole basis for accepting the plea after you do that thorough inquiry is that you received sufficient counsel in the first place, right? That's right, Your Honor, but I do believe that we can look at the admissions during the change of plea hearing to refute, for example, allegations in the affidavit that petitioner did not receive advice from counsel pertaining to charges against her. As for the video, counsel recognized specifically that a bad part of the video was that during filming Justin Ritchie moved the camera to focus on the minor child. This was during the course of the sexually explicit conduct, and this is like Dawson, where the defendant in Dawson had moved the camera from his penis, his genitals, to the minor victim and then back. So we can see that in many ways this is an easier case than Dawson and Paolo because in addition to the video itself, you also have the petitioner's admissions that she was aware that not only was her husband sexually interested in children, but he was aroused by specifically the act of the minor victim, in this case, breastfeeding. Do we have to go there? My understanding from counsel on the other side is that we're jumping too far ahead. That's not our responsibility to decide whether today she would have a viable defense. The question is whether she was deprived of effective assistance of counsel at the time, and if at the time that theory of defense, even if not ultimately successful, was reasonable enough for her to present. I think all of this weighs into counsel's determinations. So in determining whether or not counsel acted reasonably to determine deficient performance, we would ask what was the evidence against Sarah Ritchie at the time she was debating whether or not to plead guilty. And in light of that evidence, and a plain, a natural reading of the- And the law, right? Because that's before Dawson, but also not just the evidence, but also what was the law at the time. And at the time, is it your position that she had absolutely no defense that might have resulted in a different outcome, including a better plea deal? Certainly no defense based on the argument that the minor victim was required to be actively engaged in sexually explicit conduct to constitute a violation of 2251 subsection A. And really, if you look at the petitioner's declaration, that's pretty much the only defense that she sets forth. And so in terms of the law at the time the defendant was pleading guilty, again, we have the decisions that foreshadow Dawson, so Lowe's and Finley, but not only that. It was reasonable to conclude before Dawson that the conduct violated a plain, natural reading of the statute. This court in Dawson undertook such an analysis in construing 2251 subsection A. This court looked at the word use and applied the dictionary definition of the word use and determined that it's quite a broad term and that the adverbial phrase, the adverbial preposition phrase, to engage in did not limit that. So this court's reading of 2251 subsection A was not strained by any means and it was a plain and natural reading of the statute. And so this is the law that counsel at the time of the advice to plead guilty would have been confronted with. And so because of the evidence against Sarah Ritchie and the severe penalty she was facing, counsel plea bargained and reasonably advised her to plead guilty, which allowed her to avoid the receipt of child pornography charge, which carried up to an additional 20 years in prison. And the petitioner was able to obtain reductions for acceptance of responsibility and cooperation and she ultimately received the lowest possible sentence on the sexual exploitation of a minor charge. Turning to prejudice, as noted in our 28-J letter and as the Supreme Court has set forth in Lockhart v. Fretwell, the prejudice inquiry is not only concerned with outcome determination. There are circumstances, such as when there's been a change in law, where we ask additionally whether there's been any fundamental unfairness in the proceedings. And to do so, we apply current law, which in this case would be Dawson. So here, analyzing prejudice under current law, counsel's advice that she was guilty under 2251 subsection A was correct. And the only claimed ineffective assistance of counsel pertains to a failure to provide incorrect advice. But we see that under Fretwell and Guzman, she's unable to obtain a windfall based on an incorrect principle of law. Finally, the district court was able to make these determinations based on the record before it and it was not required to hold an evidentiary hearing. This was largely a legal question. The district court didn't take counsel's side on any issue of material fact and did not reject out of hand any of Petitioner's allegations. And remember that this court was, excuse me, the district court was ruling on the issue before Dawson. So the district court noted that even if, for example, this court were to go the other way in Dawson, Petitioner would still be unable to establish ineffective assistance of counsel. If there are no further questions, we would ask that this court affirm the judgment of the district court. Thank you, Mr. Aycock. We'll hear again from Ms. Fitts. Thank you, Your Honor. There's a number of things that I want to address, but I want to start with the most important thing that I want to make sure that I don't forget today to point out to this court. And that is there's a lot of discussion about whether or not at the time the plea was entered whether or not under the law Sarah Ritchie had a defense or any sort of defense whatsoever to make to this charge. And I think I just heard the government attorney say that she had no defense to the charge. Well, what I would say to this court is we should look at the case of Audra Mabel. And Audra Mabel, the facts in this case are so unique where you have a child who's engaging in the act, a non-sexual act of breastfeeding while her mother and her parents are engaged in sexual activity. And the only other case that we have that lays out a similar factual basis is the Audra Mabel case. And even though Audra Mabel, she appealed her case up to the 11th Circuit, this was not an issue that was discussed. This is purely based on the facts. You had the same exact video that Audra Mabel made where she was breastfeeding her child. She was filming herself breastfeeding her child and masturbating. And then she made that video for the purpose of satisfying her boyfriend, Justin Ritchie, his sexual desire. And then she sent him that video to sexually arouse and sexually satisfy him. And she was not charged by the same prosecutor who charged this case with a 2251A violation. So at the time that Sarah Ritchie entered her plea, if her attorney had done his due diligence and not just taken the word of what the government's case was and what they thought they could prove, and if he had actually researched the law and done his due diligence to find out what was going on in other similarly situated cases, like the co-defendant in this case, Audra Mabel, he would have seen that there would have been an arguable defense to this charge. This is the only video that Sarah Ritchie was charged with. She did not have any other videos like Audra Mabel did, which presumably is why she was charged with a violation, a 2251A, for this video when Audra Mabel, for the exact same video, was not. Can I ask you to address the case law that we have that says that reasonably effective representation does not include a requirement to make predictions about how the law will develop? Sure. And I would say that at the time, and this is demonstrated by Audra Mabel's case, that at the time, even with Laos, which the government just referenced, and Finley, those cases, there has to be a depiction of the minor engaging in the sexual activity to fall within the scope of 2251A. So even though we've had this development in case law after the conviction in this case, which would include Howard, which we still feel like even though that's persuasive authority, that is still demonstrative of the merits of our case, that even though we've had this development of case law, the law is the same. The law has not substantively been changed. It just seems like even if you put everything in the soup, stuff that predates and stuff that postdates, you've got the third and eighth circuits, I get it that you think that it's distinguishable, but sort of leaning the other way. Remember, IAC requires that no reasonable lawyer could have made this judgment, right? So you've got the third and eighth circuits trending this way. We want to count the seventh if we want to count postdating stuff going this way. Dawson, then if we're going to count the seventh, we've got to count Dawson. It's headed back this way. In that soup, I just don't see how we can say, even factoring in the Audra Mabel case, that no reasonable lawyer could have advised her this way. She's facing a much stiffer sentence. He got her out of 20 years. It's hard for me to believe that this meets the no competent counsel standard. The problem is that he never even had this discussion with her. He said to her, the government's theory of the case is this. And I agree with that. And accordingly, you're guilty, because the government essentially says that you're guilty. And the problem is, is that counsel, in their work case, there is the Carroll case, which is cited in our brief, there is the Steen case. The Steen case actually sets forth a two-part test for considering behavior under 2251A. So there was enough there, in addition to the plain language of the statute, that counsel at least had to have the discussion with his clients about what it was that she was charged with, what her options were, what the problems with the government's case was. That way she could make an informed decision. I mean, if at the end of the day, if counsel had informed her of all of these things, told her what the different laws were, talked to her about the idea that the breastfeeding child may or may not be considered under the law to be engaging in sexual conduct, then she at least would have had the opportunity to make her plea knowingly and voluntarily, which is not what happened in this case. She had no idea. She relied on the advice of counsel. Counsel did not provide her a full, informed view of the nature of the charge against her or what her legal options were. And that's why this case, it's a miscarriage of justice, frankly. And the conviction should be reversed. And if the court finds it necessary to remand the case, then she will be happy to exercise her legal options now, knowing what the law is. Thank you. Thank you, counsel. All right, our last case for today.